CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 03, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAQUAN SAUNDERS, | ) | |
|     Plaintiff, | ) | Case No. 7:24-cv-00414 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| C. VILBRANDT, et al., | ) | Senior United States District Judge |
|     Defendants. | ) | |

## MEMORANDUM OPINION

Daquan Saunders, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against correctional officials at Red Onion State Prison. The case is presently before the court for review under 28 U.S.C. § 1915A(a). Having reviewed the amended complaint, the court concludes that it must be dismissed for failure to state a claim upon which relief may be granted.

### I.  Background

The events giving rise to this action occurred while Saunders was incarcerated at Red Onion, a maximum-security prison operated by the Virginia Department of Corrections. Am. Compl., ECF No. 4, at 2. On July 30, 2023, Saunders's brother visited him in person at the prison. Id. at 3. Saunders alleges that security staff placed five correctional officers wearing body cameras around the visitation table "to visually observe, listen to[,] and audio record [his] conversations" with his brother. Id.

On August 8, 2023, Saunders filed a written complaint alleging that security staff violated federal law by recording his oral conversations in the visitation room "without a search warrant [and] without notice." Id. at 4. In a response dated August 14, 2023, Captain J. Hall advised

Saunders that a "400 series policy allows the use of body cameras in visitation" and that the policy is "not authorized for [release to] inmates." Id. (internal quotation marks omitted).

On August 17, 2023, Saunders filed a regular grievance raising the same challenges. Id. at 5. C. Vilbrandt, the institutional ombudsman at Red Onion, rejected the grievance at intake on the basis that it was a request for services. Id. Saunders subsequently appealed the intake decision to C. Meade, the regional ombudsman. Id. Saunders alleges that Meade upheld the decision for a different reason, namely that he "must identify how the issue caused personal harm or loss to [him] personally." Id. (internal quotation marks omitted). Meade also indicated that all policies had been followed. Id.

Based on the foregoing allegations, Saunders filed this action under 42 U.S.C. § 1983 against Vilbrandt, Meade, and John Doe. Id. at 1. Saunders claims that John Doe violated he Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. (Title III), "by authorizing the audio recording [of] oral conversations" with his brother during visitation at Red Onion. Id. at 3. Saunders claims that Vilbrandt and Meade retaliated against him in violation of the First Amendment by rejecting his grievance.

## II.    Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from an employee or agent of a governmental entity. 28 U.S.C. § 1915A(a). The court must "dismiss a complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

### III. Discussion

Saunders seeks relief under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

#### A. Claims against John Doe

Saunders claims that John Doe violated the Fourth Amendment by authorizing officers to record his conversations with his brother in the visitation room at Red Onion. See Am. Comp. at 4 ("The 4th Amendment requires prison staff to obtain a search warrant before audio

3

recording prisoner's oral conversations unless they waive the right under the implied consent law after prison staff gives them notice that their oral conversation will be recorded."). Saunders also claims that John Doe violated Title III by authorizing officers to record the conversations with their body cameras.

### 1. Fourth Amendment

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." Bailey v. United States, 568 U.S. 186, 192 (2013) (quoting U.S. Const. amend. IV). "A 'search' occurs for purposes of the Fourth Amendment where the government violates a person's 'reasonable expectation of privacy.'" United States v. Taylor, 54 F.4th 795, 803 (4th Cir. 2022) (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). "Warrantless searches are per se unreasonable unless they fall within one of the few specifically established and well-delineated exceptions to the Fourth Amendment's warrant requirement." Id. (internal quotation marks omitted). If a person has no reasonable expectation of privacy, however, a warrant is not required. See United States v. Goldstein, 914 F.3d 200, 202 (3d Cir. 2019) ("[I]f there is no reasonable expectation of privacy as to [the information obtained], then its acquisition does not require a search warrant.").

"In order to demonstrate a legitimate expectation of privacy, [an individual] must have a subjective expectation of privacy," United States v. Bynum, 604 F.3d 161, 164 (4th Cir. 2010) (internal quotation marks omitted), and that expectation of privacy must be "objectively reasonable; in other words, it must be an expectation that society is willing to recognize as reasonable," United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011) (internal quotation

4

marks omitted). The burden of establishing a legitimate expectation of privacy rests with the party claiming a Fourth Amendment violation. United States v. Daniels, 41 F.4th 412, 415 (4th Cir. 2022).

Here, even if Saunders subjectively believed that his conversations in the prison visitation room would be private, he does not plausibly allege that he had a reasonable expectation of privacy. "[I]mprisonment carries with it the circumscription or loss of many significant rights," Hudson v. Palmer, 468 U.S. 517, 524 (1984), and loss of privacy is one of the "inherent incidents of confinement," Id. at 528. Although prisoners do not lose all rights to privacy while incarcerated, their reasonable expectations of privacy are "quite limited." Payne v. Taslimi, 998 F.3d 648, 658 (4th Cir. 2021) (concluding that a prisoner lacked a reasonable expectation of privacy in the disclosure of his HIV diagnosis); see also Hudson, 468 U.S. at 525–26 (holding that a prison inmate lacked a reasonable expectation in his prison cell). "Because prisons routinely monitor inmate conversations," United States v. Ramsey, 786 F. Supp. 2d 1123, 1126 (E.D. Va. 2011), courts have held that "any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls," United States v. Gangi, 57 F. App'x 809, 815 (10th Cir. 2003) (quoting United States v. Van Poyck, 77 F.3d 285, 291 (9th Cir. 1996)). The same is true for conversations in a prison visitation room. See United States v. Harrelson, 754 F.2d 1153, 1169 (5th Cir. 1985) ("The question presented here is whether [the defendant and his wife] had a reasonable expectation of privacy as they spoke to each other in jail. The answer must be that they did not. It is unnecessary to consult the case law to conclude that one who expects privacy under the circumstances of prison visiting is, if not actually foolish,

exceptionally naïve."); see also United States v. Willoughby, 860 F.2d 15, 21 (2d Cir. 1988) ("Contacts between inmates and noninmates may justify otherwise impermissible intrusions into the noninmates' privacy. Thus, . . . noninmate visitors may have their conversations with inmates monitored."); Avery v. Helder, No. 5:16-cv-05169, 2017 WL 4163663, at *9 (W.D. Ark. Sept. 20, 2017) ("The Magistrate Judge is correct that neither visitors nor inmates have any expectation of privacy in their conversations, and the way in which prisons and jails choose to conduct visitation sessions is an administrative matter not generally within the court's oversight."). Because the amended complaint does not plausibly allege that Saunders had a reasonable expectation of privacy when he spoke to his brother in the visitation room, it fails to state a claim under the Fourth Amendment.

        **2.**     **Title III**

For the same reason, the amended complaint fails to state a claim under Title III, which is also known as the Federal Wiretap Act (FWA). Title III generally prohibits the unauthorized interception of "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(A). An "oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). "The FWA's legislative history shows that Congress intended the Act's oral communication definition to parallel the 'reasonable expectation of privacy test' articulated by the Supreme Court." Stewart v. City of Oklahoma City, 47 F.4th 1125, 1134 (10th Cir. 2022) (brackets and additional quotation marks omitted). Based on the definition and the legislative history, courts have held that "a plaintiff asserting an FWA violation for intercepted oral communications must show a reasonable expectation of

privacy in those statements." Id. at 1133–34; see also Huff v. Spaw, 794 F.3d 543, 548 (6th Cir. 2015) ("The language makes clear that Congress did not enact Title III to protect every face-to-face conversation from interception. We have held that a person engages in protected oral communication only if he exhibited an expectation of privacy that is both subjectively and objectively reasonable."); Deegan v. Rudman, No. 3:10-cv-00016, 2011 WL 251226, at *6 n.12 (W.D. Va. Jan. 26, 2011) (collecting cases); Roller v. McKeller, 711 F. Supp. 272, 281 (D.S.C. 1989) (noting that "neither Title III . . . nor the Fourth Amendment protects parties to an intercepted conversation who speak with no legitimate expectation of privacy"). Because Saunders does not plausibly allege that he had a reasonable expectation of privacy when he spoke to his brother in the visitation room, their conversation "does not qualify as an 'oral communication'" for purposes of the statute. Deegan, 2011 WL 251226, at *6 n.12. Accordingly, the statutory claim against John Doe must be dismissed.

### B. Claim against Vilbrandt and Meade

Saunders claims that Vilbrandt and Meade retaliated against him in violation of the First Amendment by rejecting the grievance that he submitted against security staff assigned to the visitation room. Saunders alleges that Vilbrandt improperly rejected the grievance at intake on the basis that it was a request for services and that Meade erred in upholding the intake decision.

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while incarcerated." Shaw v. Foreman, 59 F.4th 121, 130 (4th Cir. 2023) (internal quotation marks omitted). "To state a colorable First Amendment retaliation claim, a plaintiff must allege (1) he engaged in protected First Amendment activity, (2) the defendants took some action that

adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." Id. (internal quotation marks and brackets omitted).

Here, Saunders plainly engaged in protected First Amendment activity by submitting a grievance. Id.; see also Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (holding that an inmate satisfied the first element by "alleging that he filed a grievance against a sergeant for battery"). The court concludes, however, that Saunders's allegations are insufficient to satisfy the second element of a First Amendment retaliation claim. The second element requires a plaintiff to demonstrate that a defendant took some action that adversely affected his First Amendment rights. Id. at 249. In particular, a plaintiff "must show that the defendant's conduct resulted in something more than a de minimis inconvenience" and that it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rector & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks omitted); see also Snoeyenbos v. Curtis, 60 F.4th 723, 731 (4th Cir. 2023).

Saunders's allegations fall short of establishing that Vilbrandt and Meade took some action that adversely affected his First Amendment rights. In similar circumstances, courts have held that the "failure to provide . . . grievance forms in a timely fashion would not chill a person of ordinary firmness from continuing to file grievances," Green v. Snyder, 525 F. App'x 726, 730 (10th Cir. 2003), and that "[t]he denial of grievances is not an 'adverse action' for retaliation purposes," Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015); see also Mitchell v. Thompson, 564 F. App'x 452, 457 (11th Cir. 2014) ("Mitchell also alleges Cross retaliated against him, when she denied his grievances. This allegation fails to state a claim for relief,

8

because it does not show Mitchell suffered an adverse action that likely would deter a person of ordinary firmness from engaging in such speech."). As the Eighth Circuit has explained, such actions are "of little consequence because inmates are only required to exhaust available remedies before seeking judicial relief." Gonzalez v. Bendt, 971 F.3d 742, 746 (8th Cir. 2020) (citing 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632 (2016)); see also Washington v. Myers, No. 4:22-cv-01858, 2023 WL 6797008, at *5 (M.D. Pa. Oct. 13, 2023) ("[R]ejection or dismissal of a grievance—which happens frequently in prisons and is usually the first step in mandatory administrative exhaustion of a civil rights claim—is not an actionable adverse action for retaliation purposes.") (footnote omitted).

Consistent with these decisions, the court concludes that the rejection or denial of a grievance "would not deter an inmate of ordinary firmness from continuing to exercise his First Amendment right to file grievances and then to seek judicial remedies." Gonzalez, 971 F.3d at 746. Because Saunders does not allege facts sufficient to satisfy the second element, the retaliation claim against Vilbrandt and Meade must be dismissed.

## IV. Conclusion

For the foregoing reasons, the court concludes that Saunders's amended complaint fails to state a claim upon which relief may be granted. Accordingly, the court will dismiss the action without prejudice under 28 U.S.C. § 1915A(b)(1). An appropriate order will be entered.

Entered: January 2, 2025

Mike Urbanski
Senior U.S. District Judge
2025.01.02 21:10:47
-05'00'

Michael F. Urbanski
Senior United States District Judge

9